**SO ORDERED.**

**SIGNED this 28th day of April, 2014.**





Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BONITA S. MOFFETT-ROBERTS, | ) | Case No. 13-12442 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

## ORDER DENYING CONFIRMATION AND VALUING DEBTOR'S HOME

Bonita Moffett-Roberts lives in a manufactured home that is set on a lot she owns near Wichita. Green Tree Servicing LLC services a loan to her that is held by an asset trust. The loan is secured by a mortgage on the real property and her security agreement that describes the home which is not permanently set on the land. Both liens are properly perfected. To allow Green Tree's secured claim, I must determine the value of the unattached manufactured home—which is personal

1

property, by considering what it would cost to replace the home considering its age and condition. Then, we determine the value of the real property on which the home is presently set. Because 11 U.S.C. § 506(a)(2) specifically refers to personal property, the land's value is not governed by it. Traditional comparative sales analysis is a better method for valuing land. After carefully considering the testimony and reports of both parties' appraisal witnesses, I value the debtor's manufactured home at $24,161 and her land at $22,285 for a total value of $46,446. I decline to assess additional value based on Green Tree's appraiser's assessment of what an appropriate list price might be. But as the debtor's plan only proposes to pay Green Tree a total of $10,000 on account of its secured claim, her plan cannot be confirmed and Green Tree's objection must be sustained.[1]

Facts[2]

Bonita Moffett-Roberts filed this case on September 19, 2013. She is an unemployed widow drawing unemployment income and a small sum of monthly

---

[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(a) and (b)(1). Ms. Moffett-Roberts appeared in person and by her attorney Michael Studtmann. Green Tree Servicing appeared by its attorney John F. Michaels. The Chapter 13 trustee Laurie B. Williams also appeared at the evidentiary hearing.

[2] The parties entered into a pretrial stipulation of facts that include the fact that debtor's loan obligation under a 1998 Note in the original principal amount of $72,115.02 is secured by a properly perfected lien on the real estate and a 1997 Schult manufactured home as evidenced by a real estate mortgage and by a certificate of title to the home notating the lien. The loan documents also reflect that Ms. Moffett-Roberts (formerly Ms. Laake) is the sole obligor on the note and security documents and the sole owner of the property. The debtor reserved the right to dispute the amount claimed due by Green Tree, but the parties stipulate

2

retirement income. She lives with her daughter and her five grandchildren in a 28 by 50 foot, 1997 Schult manufactured home that is set on land in rural Sedgwick County. The home has four bedrooms and two bathrooms. Aside from Ms. Moffett's accommodations being tight, her home suffers from numerous deferred maintenance problems. Its heating and air conditioning system is inoperable as is the shower in the master bedroom. She and her family members rely on portable space heaters to heat the place. The doors do not tightly shut, resulting in wind-blown dust throughout the house. The subfloor of the home in several areas is damaged and tile in her kitchen is broken and, based on the photos that accompany the appraisals, there are many other cosmetic and structural issues. Ms. Moffett's husband died in 2010 and she is unable to maintain the property as he did.

Under her plan, Ms. Moffett offers to pay $500 per month for 60 months, or $30,000.[3] It proposes a pro rata payment of $5,000 toward each of the components of Green Tree's secured claim – the real estate and the manufactured home -- as the alleged value of each collateral component.[4] Green Tree claims an unpaid balance on its note of $65,192 and asserts in its proof of claim that it is fully secured.[5] Ms. Moffett owes an arrearage of $5,044. Sedgwick County asserts a secured claim of

---

that the only issue for trial was the value of the property securing the claim. *See* Dkt. 24.
[3] According to Ms. Moffett's B22C Statement, she is a below-median income debtor even without claiming a household size that includes her daughter and five grandchildren.
[4] Dkt. 5, pp. 7-8.
[5] Claim 6-1 filed October 31, 2013.

3

$397.57 in ad valorem real estate tax on the lot.[6] That claim primes Green Tree's mortgage lien. The County is also owed personal property tax of $571.84 on the mobile home, but that is an unsecured priority claim.[7]

In support of her plan, Ms. Moffett offered the expert testimony of appraiser Brian Elliott.[8] Mr. Elliott has testified in this Court before and his expertise is unquestioned. He approached valuing this property essentially as if it were a stick-built home, employing comparable sales of other similar mobile homes set on land roughly like the debtor's. He did not utilize a NADA mobile home valuation because, as he testified, that data is based on cost and is only useful for well-maintained property. Nor did he give much weight to the per acre value of the land.[9] Instead, he looked for similar comparable sales and, after adjusting them to be more like the subject property, he concluded that the value of the mobile home and land together is $40,000 as of January 21, 2014. His report indicates that he found the land to be worth $19,000 based on comparable value. His report doesn't contain a separate valuation of the manufactured home, but he testified that he'd received an oral price quotation of $20,000 from East Side Homes.[10]

---

[6] Claim 5-1 filed October 30, 2013. *See* KAN. STAT. ANN. § 79-1804 (1997) (a lien for real estate taxes attaches to the property subject to the tax on November 1 of each year).
[7] *See* § 507(a)(8)(B) and KAN. STAT. ANN. § 79-2101 (2013 Supp.).
[8] Ex. 1.
[9] The home sets on a 4.41 acre lot or tract.
[10] On Elliott's direct examination, I sustained the creditor's objection to this testimony, but Green Tree elicited further testimony about it on cross examination.

4

Green Tree offered the expert report of Troy Watts of Watts Realty and Little Bull Auction & Sales.[11] Mr. Watts also satisfied me as to his expertise and reliability of his opinions in this case. His, however, was a different approach to valuing the property. He separately valued the manufactured home utilizing an on-line NADA manufactured housing guide that provides sale prices for homes of various years, makes, and models, and provides a means of adjusting those values to consider the addition or subtraction of options as well as the condition of the home. Applying this guide to the home in question, Mr. Watts concluded that it was worth $24,161, considering its age and condition. As for the land, he surveyed historical listing and sales prices for mobile home sites throughout Sedgwick and Butler Counties to develop 21 comparative sales or listings and concluded that the value of the lot itself is $25,000. Two of his comparable sales were also used by Mr. Elliott. Though the median price of the lots he surveyed is less than $25,000, he adjusted upwards because of his perception that 4-6 acre tracts for mobile homes are in short supply. My review of his report suggests that the land sales he reported brought an average of $4,432 per acre. He opined that the present property (land and home) should sell for $48,000 to $52,000, and that he would list it for $52,000. Where Elliott testified that banks were unwilling to lend on lots like this, depressing the price, Watts believes that banks are becoming more aggressive in an effort to compete with and mimic the USDA Rural Housing lending in country settings. He conceded the numerous physical defects of the mobile home, but

---

[11] Ex. 1.

insisted that he could see it with the land for $52,000. Like Mr. Elliott's, Mr. Watts' testimony and report are credible.

Analysis

Whether Ms. Moffett's chapter 13 plan is confirmable turns on her treatment of Green Tree's secured claim and specifically, the value of the collateral securing its loan. As in many prior cases, I am called on to determine the value of the manufactured home separately from the land on which it sits. Because the manufactured home is personal property and subject to 11 U.S.C. § 506(a)(2), the Court concludes that the value of the home and the real estate must be determined separately.[12]

As this Court held in *In re Kollmorgen,* § 506(a)(2) controls the determination of value of the manufactured home and must be based on replacement value.[13] And because the Moffett manufactured home is used for "personal, family, or household purposes" replacement value "shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."[14]

---

[12] Under KAN. STAT. ANN. § 58-4204(a) (2013 Supp.) a manufactured home is considered personal property unless the home is permanently affixed to real property *and* the owner applies to have the certificate of title eliminated, thereby converting the home to real property as provided in § 58-4214 (2005). Ms. Moffett's home is not permanently affixed to the real estate and she has not invoked the procedure to eliminate its title.
[13] *In re Kollmorgen,* Case No. 11-10904, 2012 WL 195200 at *2 (Bankr. D. Kan. Jan. 20, 2012).
[14] *Id. See* § 506(a)(2).

6

Ms. Moffett, as the proponent of her chapter 13 plan bears the burden of proof that her plan meets the statutory requirements for confirmation.[15] Debtor also has the burden to come forward with evidence to rebut the presumption of validity that Green Tree's claim is fully secured; if debtor meets that burden of production the burden shifts back to Green Tree to prove that its personal property collateral is worth the value it advances.[16] Both appraisals received in evidence are credible and defensible. The Elliott appraisal of the manufactured home reflects no separate value and his testimony indicates that a dealer told him that a similar unit would be worth $20,000. The Watts appraisal utilizes the NADA manufactured housing guide to determine the value of the unit and to adjust those values for its age and condition. I expressly approved the use of the NADA manufactured housing appraisal guide in *Kollmorgen* as the starting point for retail merchant value with age, condition, and component adjustments to reach the replacement value of a manufactured home under § 506(a)(2).[17]

While valuing the home and land together seems sensible (and would be, outside this arena), the Code requires us to determine the home's value alone in determining what it contributes to the creditor's secured claim. As Watts' appraisal

---

[15] *Alexander v. Hardeman (In re Alexander),* 363 B.R. 917, 921-22 (10th Cir. BAP 2007).
[16] *Kollmorgen* at *2; *In re Coleman*, 373 B.R. 907, 911-12 (Bankr. W.D. Mo. 2007) (discussing burdens of proof when valuation in the plan confirmation context implicates claim allowance and applying the burden of producing evidence applicable in the claims allowance context).
[17] *Kollmorgen* at *4. *See also, In re Coleman,* 373 B.R. at 913.

7

offers the only evidence that considers the home's retail replacement price considering its age and condition, I find that its § 506(a)(2) value is $24,161.

Valuing the land is less straightforward. It is difficult to extrapolate land values from the Elliott appraisal. While he testified that he attributed $19,000 to the land, he also testified that he did not consider the per acre cost of land in the comparable sales. In his report, he adjusted the value of the land in each comparable sale correcting for acreage. Watts offered a land-only appraisal value of $25,000, a number that is adjusted upwards from the actual mean and median per-acre prices his research reported, based on his belief that the demand for these types of lots outstrips the current supply. His report includes not only lots that have sold, but also the asking price of other lots so far unsold. This seems less than reliable to me; presumably what is asked is somehow based on the market price, but it does not demonstrate a market price. The average sales price of the 13 tracts Watts lists that were actually sold is $22,285. These lots range from 4.62 to 5.43 acres. The sales are fairly recent, beginning in 2012. I conclude that this is the better evidence of the value of these lots and that the value of the land as appraised is not more than $22,285. I decline to adopt as the value of this real estate for bankruptcy purposes what Mr. Watts thinks he would ask in a listing and therefore reject the $52,000 value he proposed.

In sum, the value of Green Tree's collateral is $46,446, consisting of $22,285 for the land and $24,161 for the mobile home. Its secured claim is allowed in that amount. Because this far exceeds what the debtor proposed to pay Green Tree and,

8

indeed, all of her creditors under the plan, Green Tree's objection must be SUSTAINED and confirmation is DENIED. The debtor is granted 28 days to amend her plan to deal with this significant discrepancy, convert her case to chapter 7, or dismiss.

###